# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBERT BARROCA, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 13-1286 (RBW) |
| | : | |
| HUGH HURWITZ,[1] *et al.*, | : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on the Defendants' Motion to Dismiss, which the Court grants for reasons discussed below.

## I. BACKGROUND & PROCEDURAL HISTORY

Robert Barroca ("the Plaintiff"), proceeding *pro se*, asserts in his Complaint ("Compl.") various constitutional violations. The Plaintiff, a federal prisoner, was detained at the United States Penitentiary in Terre Haute, Indiana from October 2005 through April 2011. Compl. at 3 ¶ 1. He is serving a 240-month prison sentence imposed by the United States District Court for the Northern District of California in June 2005. *See* Memorandum of Points and Authorities in Support of the Defendants' Motion to Dismiss ("Defs.' Mem.") at 2; Plaintiff's Opposition to the Defendants' Motion to Dismiss. Fed. R. Civ. P. 12(b) ("Pl.'s Opp'n") at 6. The conviction and sentence were subsequently affirmed by the Ninth Circuit. *United States v. Barroca*, 310 F. App'x 69, 70 (9th Cir. 2008). The Plaintiff's Petitions for en banc review by the Ninth Circuit and for certiorari in the Supreme Court were denied on October 24, 2008 and February 23, 2009,

---

[1] The current Acting Director of the Bureau of Prisons, Hugh Hurwitz, is automatically substituted as Defendant in his official capacity for his predecessor pursuant to Fed. R. Civ. P. 25(d).

respectively. *United States v. Barroca*, Nos. 98-10275, 05-10462 (9th Cir. Oct. 24, 2008); *Barroca*, 310 F. App'x at 70, *cert. denied*, *Barroca v. United States*, 555 U.S. 1202 (2009).

The crux of the Plaintiff's Complaint relates to his frustrations with the implementation of the Trust Fund Limited Inmate Computer System ("TRULINCS") by the Federal Bureau of Prisons ("BOP"). *See* Compl. at 4 ¶ 4. He alleges that TRULINCS prevented him from timely filing his §2255 Habeas Petition ("Habeas Petition"). *See id.* He further alleges that TRULINCS, which requires inmates, with limited exceptions, "to place a TRULINCS-generated mailing label on all outgoing postal mail," did not provide adequate space to include the full address of the U.S. District Court for the Northern District of California. *See id.*, Program Statement P5265.13, Trust Fund Limited Inmate Computer System (TRULINCS) – Electronic Messaging (2/19/2009), Sec. 4.c., Plaintiff's Exhibit ("Pl's Ex.") A. Consequently, the Plaintiff instead mailed the Petition to his sister, so that she could then mail it to the Court. Compl. at 6 ¶ 11. As a result, the Plaintiff's Habeas Petition was filed approximately six weeks late. *See* Order Dismissing the Petitioner's Motion for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255 With Prejudice ("Ord. Denying Hab. Pet."), *United States v. Barroca*, No. CR 94-0470 (N.D. Cal. Aug. 27, 2010). In dismissing the Plaintiff's Habeas Petition, Judge Vaughn R. Walker of the Northern District of California, stated the following:

> Standing in the way of [Barroca's] claim for relief under section 2255 is the one-year statute of limitations . . . . Barroca was required to file his petition within one year after his judgment of conviction became final. 28 USC § 2255(f)(1). A judgment of conviction becomes final upon denial of a petition for certiorari . . .

> Barroca's judgment of conviction became final when the Supreme Court denied his certiorari petition on February 23, 2009. Barroca did not sign the instant § 2255 petition until March 22, 2010 and the petition was not filed with this court until April 6, 2010. Doc #782. Under either the date of filing or the date of his signature, Barroca's petition is untimely pursuant to 28 USC § 2255(f)(1) . . .

As it plainly appears from the record before the court that Barroca is not entitled to relief on his untimely petition, the petition is DISMISSED pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings.

*Id.* at 3–4.

The Plaintiff then filed a Motion to Toll the Statute of Limitations and to Vacate Judgment. *See* Motion and Request for Statutory and Equitable Tolling of AEDPA's Statute of Limitations and Motion to Vacate ("Mot. to Toll"), *United States v. Barroca*, No. CR 94-0470 (N.D. Cal. Sept. 13, 2010). The Plaintiff's Motion was dismissed. *See* Order Dismissing Petitioner's Motion for Wirt of Habeas Corpus Pursuant to 28 U.S.C. ¶ 2255 With Prejudice, Denying Certificate of Appealability ("Ord. Denying Mot. to Toll"), *United States v. Barroca*, No. CR 94-0470 (N.D. Cal. Dec. 20, 2011). With respect to the mailing labels, the court found that

. . . the alleged inability to fit the Court's mailing address on the TRULINCS labels cannot serve as a basis for statutory tolling. Although Petitioner claims that the mailing address of the Court did not fit on the labels used by the TRULINCS program, the evidence establishes that the Court's mailing address did, in fact, fit on TRULINCS labels.[] Further, Petitioner's contention is belied by the fact that he was able to successfully file three separate pleadings with other districts in December 2009, at least two of which were served on parties using mailing addresses as long or longer than that of this Court.

*Id.* at 8 (footnote and citation omitted).

Next, the Plaintiff sought relief by way of a Motion Under Federal Rule of Civil Procedure 60(b). *See* Motion for Relief from Judgment; Newly Discovered Evidence pursuant to Fed. R. Civ. P. 60(b)(1)–(4); Request for Indicative Ruling Fed. R. Civ. P. 62.1; Request for Evidentiary Hearing ("Mot. for Relief from Judgment & Indic. Ruling"), *United States v. Barroca*, No. CR 94-0470 (N.D. Cal. Dec. 5, 2012). This Motion was also denied, and with respect to the TRULINCS issue, the court held:

In the previous motion to toll, [the Government] provided a declaration of a prison employee familiar with the TRULINCS system who stated that the address for the Court could indeed fit on the four lines generally allowed by the system, and that in addition, the system allowed addresses with up to six lines through the use of "Re:" and "Comments" lines . . . . The employee also stated that he had spoken with Petitioner about his problem and suggested abbreviating the Court's address if he was having difficulties, but that to his knowledge Petitioner never attempted to do so . . . .

Additionally, even if he were precluded from sending the filing to this Court, Petitioner does not provide the date he mailed the petition to his sister (whether it was sent within the limitations period), or explain why it took 37 days for the petition to reach her, and for her to mail it to this Court. He has not established entitlement to tolling for the entire 37 day period.

See Order Denying the Plaintiff's Motion for Relief from Judgment and for an Indicative Ruling ("Ord. Denying Mot. for Relief from Judgment & Indic. Ruling") at 2–4, *Barroca v. United States*, No. CR 94-0470 (N.D. Cal. Jan. 11, 2013). The Plaintiff's subsequent Motion for Reconsideration was also denied. *See* Order Denying the Petitioner's Request for an Indicative Ruling, Request to Amend or Supplement Petition, and Motion for Relief from Judgment ("Ord. Denying Mot. to Alter & Amend"), *Barroca v. United States*, No. CR 94-0470 (N.D. Cal. Mar. 27, 2013), ECF No. 890. In relevant part, the court reasoned:

Petitioner . . . takes issue with this Court's holding that he offered no evidence to contradict the December 20, 2011 finding that this Court's address fit on the TRULINCS labels, and that the TRULINCS system thus did not prevent him from filing his habeas petition within the statute of limitations. Docket No. 889 at 7. Petitioner offers no new evidence or argument on this front, but merely repeats arguments he raised in his previous motion. *See* Docket No. 882. He argues, for example, that no one ever showed him how to abbreviate the Court's address to fit on a TRULINCS label. However, as noted in this Court's previous order, the two abbreviations included in the government's example label ("Attn:" and "CA") are in general use, and it is not clear why Petitioner

would specifically need someone to instruct him on how to use such abbreviations.[] *See* Docket No. 886 at 3. In any event, Petitioner raises no new point on this issue . . .

The only new information Petitioner offers in his motion only undermines his argument that he is entitled to equitable tolling. After concluding that he was not able to mail his habeas petition using the TRULINCS labels, Petitioner ultimately filed his petition by mailing it to his sister and having her send it to the court. In the January 11, 2013 order, this Court noted that Petitioner had not stated that he mailed the petition to his sister within the limitations period, nor did he explain why it took until 37 days after the limitations period for the petition to reach the Court. Docket No. 886 at 3-4. Petitioner now clarifies that he mailed his habeas petition to his sister after the statute of limitations had already run because he had been trying to obtain an exemption from the requirement that prisoners use the TRULINCS system . . . He does not explain why, knowing that the deadline for his petition was approaching, he waited until after the deadline passed to mail his petition to his sister, thus ensuring that it would not be timely filed.

*Id*. at 3–5 (footnote omitted).

The Plaintiff has now filed the current action, alleging violations of his constitutional rights. *See* Compl. at 1. He demands a declaratory judgment, injunctive relief, and monetary damages totaling $20 million. *See id*. at 9–11. The Plaintiff relies on *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), as support for his allegations. *Id*. at 1. He sues (1) Charles E. Samuels, Jr., (2) Thomas R. Kane, (3) Harley G. Lappin, (4) Judi Simon Garrett, and (5) John & Jane Doe Policymakers. *Id*. at 2–3. The Plaintiff is alleging that BOP officials, both known and unknown to him, are liable due to their presumed involvement in the development of the TRULINCS system. *See id*. at 6–7. He further alleges that these Defendants failed to properly train BOP staff to instruct him as to how to properly use the TRULINCS labelling system. *See id*. at 7–8, Pl's Ex. A. Although the targets of this action are new, the core of the Plaintiff's argument is the same. He again alleges that TRULINCS is "either not capable of or does not provide enough word, letter, and number space to enter" the full and

proper address of the sentencing court, which in turn, prevented him from timely filing his Habeas

Petition. *See id*. at 4 ¶ 4.

The Plaintiff alleges that the Defendants implemented TRULINCS at USP Terre Haute in

January 2010, mere weeks before the February 27, 2010 deadline for filing his § 2255 Petition.

*Id*. at 4 ¶ 3. The Plaintiff claims that the Defendants "knew or should have known that their

[p]olicy," *id*. at 4 ¶ 5 (referring to Program Statement 5265.13), "would cause/is causing harm,"

*id*. at 5 ¶ 5, specifically by "deny[ing] him access to the courts," *id*. at 5 ¶ 6. Due to this denial of

access, the Plaintiff alleges that he "was not allowed to mail his § 2255 [P]etition directly to the

district court." *Id*. at 6 ¶ 10. Instead, the Plaintiff mailed the Habeas Petition to his sister, who

filed the Petition on his behalf, albeit ". . . *37* days late past AEDPA's statute of limitations." *Id*.

at 6 ¶ 11 (emphasis in original).

The Plaintiff filed this action on July 23, 2013[2] and alleges three constitutional claims. [3]

*See* Compl., ECF No. 1, at 1, 6–9. In response to the Plaintiff's Complaint, the Defendants have

---

[2] The Defendants argue that the Plaintiff failed to file his Complaint within the statute of limitations period applicable to this case. *See* Defs.' Mem at 17–18. A defendant may raise a statute of limitations affirmative defense by way of a Rule 12(b)(6) motion "when the facts that give rise to the defense are clear from the face of the complaint." *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). "[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (citing *Richards v. Mileski*, 662 F.2d 65, 73 (D.C. Cir. 1981)). The Court does not find that the Defendant has provided sufficient factual information at this stage to support a statute of limitations dismissal under 12(b)(6), and therefore, the Court declines to dismiss on this ground.

[3] In his Opposition, the Plaintiff includes two footnotes, in which he discusses two potential additional claims, namely (1) an Administrative Procedures Act claim seeking injunctive relief, and (2) an additional claim for policymaking liability as it relates to potential future difficulties using TRULINCS to communicate with his family. *See* Pl.'s Opp'n at 2 nn.1&2. At this juncture the Plaintiff has not properly requested leave to amend pursuant to Rule 15(a)(2). These additional potential claims were not part of the original Complaint, and therefore, the Defendants would have no notice upon which they could respond to these new potential claims. The Court also finds that (continued . . . )

moved to dismiss pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") Rule 12 §§ (b)(1) and (b)(6). *See* Defs.' Mem at 1. The claims asserted by the Plaintiff are the following.

*Claim One: Policymaker Liability*

First, the Plaintiff alleges that the Defendants "personally and officially commit[ted] unconstitutional and tortious acts" when they "formulated, drafted[,] created, adopted, established and implemented" the TRULINCS mandatory outgoing mailing label requirement for all inmates," which prevented him from timely filing his § 2255 petition, thereby denying him access to the courts. *See* Compl. at 6–7.

*Claim Two: Supervisory Liability*

Second, the Plaintiff alleges that the Defendants "failed to and are currently failing to supervise, train, and/or instruct subordinate(s) and staff in the drafting, creation, formulation, establishment, and implementation of [the TRULINCS] policy to include any instructions for inmates (written or oral) how to use TRULINCS . . . to place or add any address on a mailing label or provide any exception/exemption for legal mail to the courts." *Id*. at 7–8. The Plaintiff alleges that the training by these Defendants was so "… clearly deficient" that violation of his "…constitutional rights is/was inevitable." *Id*. at 8 ¶ 3.

*Claim Three: Violation of Due Process*

Finally, the Plaintiff argues that he was denied access to the courts, because of the mandatory labeling policy. *See* id. at 8–9. In turn, he contends that the imposition of such

_____

( . . . continued) these potential claims fail to state claims pursuant to Rule 12(b)(6), as the Plaintiff's potential additional claims do not appear ripe based on the present allegations. Specifically, the Plaintiff has not stated that he has suffered "actual injury," only that there is "potential" for injury. *See* Pl.'s Opp'n at 2 nn.1&2; *see also Lewis v. Casey*, 518 U.S. 343, 356 (1996). Therefore, the Court concludes that no additional claims outside those in the original Complaint have been properly asserted in this case.

restrictions infringed upon his right to due process under the Fifth Amendment to the United States Constitution. *Id*. at 8 ¶ 4.

## II. DISCUSSION

### A. VENUE

The Defendants move to dismiss the Complaint based on improper venue or, in the alternative, request that the case be transferred to one of two other district courts. Defs.' Mem. at 12–13. The Defendants rely primarily on *Starnes v. McGuire*, 512 F.2d. 918, 926 (D.C. Cir. 1974), arguing that because the Plaintiff was sentenced in the United States District Court for the Northern District of California and was designated to serve his sentence at penitentiaries in California and Indiana, the venue in this District is improper. *See* Defs.' Mem. at 12–13. The Defendants discuss the convenience and availability of discovery materials and witnesses as the bases for transfer. *See id.* at 13. They also argue that the Plaintiff's claims relate specifically to his inability to timely file his Habeas Petition, which occurred during his confinement in Terre Haute, Indiana. *See id.*

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where it might have been brought. The Defendants have moved, pursuant to 28 U.S.C. § 1404(b), to transfer this action. While a defendant's choice of forum is a consideration when deciding a §1404(a) motion, a defendant is not ordinarily entitled to the same deference as the plaintiff. *See Mahoney v. Eli Lilly & Co.,* 545 F. Supp. 2d 123, 127 (D.D.C. 2008). Because the Plaintiff opposes transfer, the Defendants must establish that the added convenience and justice of litigating this case in their chosen forum overcomes the slight deference given to the Plaintiff's choice. *See id.* (explaining that deciding "choice of forum" is a balancing test). Further, at this stage, the Court must accept the Plaintiff's factual allegations regarding venue as true and draws all reasonable inferences from those allegations in the Plaintiff's favor. *See Pendleton v. Mukasey*,

552 F. Supp. 2d 14, 17 (D.D.C. 2008) (citing *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276–77 (D.D.C. 2002)).

District courts have discretion to adjudicate the issue of transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Here, the Plaintiff's allegation that TRULINCS policymaking occurred in the District of Columbia creates a sufficient nexus between the District of Columbia and the alleged tortious conduct. *See* Compl. at 4–7. Furthermore, the Defendants have not offered any evidence to controvert their residency in the District of Columbia, and have generally failed to provide any other factual support that this venue is improper aside from a paltry level of potential inconvenience. *See* Defs.' Mem. at 12–13. Accordingly the Defendants' request to transfer is denied.

## B.  SOVERIGN IMMUNITY & OFFICIAL CAPACITY CLAIMS

The Defendants contend that the doctrine of sovereign immunity deprives this Court of subject matter jurisdiction. *See id.* at 7–8. Specifically, the Defendants posit that they are immune from the Plaintiff's claims for monetary damages for actions performed in their official capacities. *See* Defs.' Mem at 7–9. A lawsuit against a government official in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," such that "an official [ ] capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (internal citations omitted). The United States possesses sovereign immunity from suit against itself *or one of its agencies* for money damages, except to the extent that it expressly consents to suit. *Dalehite v. United States*, 346 U.S. 15, 30 (1953). Such consent, moreover, must be clear and unequivocal. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (citation omitted). Thus, a waiver of sovereign

immunity "must be unequivocally expressed in statutory text, and [it cannot] be implied." *Lane v. Peña*, 518 U.S. 187, 192 (1996) (citations omitted).

The Plaintiff here has not established that the government has expressly consented to damages suits for constitutional violations. Such waiver is required in a damages suit, regardless of whether such actions are brought against a government agency directly or against the officials in their official capacity. *Clark v. Library of Congress*, 750 F.2d 89, 103 n.31 (D.C. Cir. 1984). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Such consent may not be implied, but must be "unequivocally expressed." *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33–34 (1992) (citations and internal quotations marks omitted). Absent an explicit waiver, the Plaintiff cannot prevail on his claims for damages against any federal government official sued in his or her official capacity. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *Clark,* 750 F.2d at 102–03; *Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1106 (D.C. Cir. 2005); *Meyer v. Reno*, 911 F. Supp. 11, 18 (D.D.C. 1996).

Accordingly, the Plaintiff's claims for monetary damages as a result of any conduct performed by the Defendants in their official capacities are dismissed. *See Ranger v. Tenet*, 274 F. Supp. 2d 1, 6 (D.D.C. 2003).

## C.  INDIVIDUAL CAPACITY CLAIMS

### 1.  Personal Jurisdiction

The Plaintiff has also sued all Defendants in their individual capacities. *See* Compl. at 3–8. The Defendants move to dismiss those claims under Rule 12(b)(2) for lack of personal jurisdiction, under Rule 12(b)(4) for insufficient process, and under Rule 12(b)(5) for insufficient service of process. *See* Defs.' Mem. at 9-12.

The United States Marshals Service submitted returns of service to the Clerk of Court for Defendants Samuels, Lappin, Kane, and Garrett. *See* Return of Service/Affidavit of Summons and Complaint (Oct. 1, 2013), ECF No. 5. Garrett signed for her summons. *See* ECF No. 5 at 4. An unknown individual signed for the summonses intended for Samuels, Lappin, and Kane, and each bore a stamp stating, "[a]ccepted on behalf of the Federal Bureau of Prisons or other named official in his/her official capacity only." *See* ECF No. 5 at 1–3. Service must be made on the Defendants sued as individuals in compliance with Rule 4(e) and all subsections, which has not occurred for Defendants Samuels, Lappin, and Kane. *See Simpkins v. District of Columbia Government*, 108 F.3d 366, 368 (D.C. Cir. 1997).

Only Defendant Garrett has been properly served personally to date, *see* ECF No. 5 at 4, and the Plaintiff has failed to timely file a request for additional time to effectuate service on the remaining unserved Defendants, *see* Defs.' Mem. at 12 ¶ 2. While this Court has discretion to allow additional time for service, it need not reach that issue in this case because the claims against the Defendants in their individual capacities must be dismissed.

2.     Failure to State a *Bivens* Claim

The Plaintiff relies on *Bivens* as the legal basis for his individual capacity claims. *See* Compl. at 1 ¶ 1; *see also* Pl.'s Opp'n at 1 ¶ 1.

*Policymaking Liability*

The Plaintiff first makes a "policymaking" liability claim, alleging that the Defendants are liable based on their assumptive personal involvement in creating Program Statement 5265.13, and subsequently, instituting the TRULINCS system on February 19, 2009. *See* Compl. at 6–7; *see also* Pl.'s Opp'n at 2, 43–55. In order to state a claim against a government official for individual liability for "infringements resulting from the establishment of unconstitutional

policies," a plaintiff must plausibly allege that "the official (1) established a policy (2) that was unconstitutional and (3) caused the plaintiff to be injured." *Weise v. Jenkins*, 796 F. Supp. 2d 188, 197 (D.D.C. 2011).

The Plaintiff, however, has not alleged any particularized facts to establish the specific role, if any, the Defendants respectively had in creating the TRULINCS policy. *See* Compl. at 7–8; *see also* Pl.'s Opp'n at 2, 43–44, 48–49. The Plaintiff falsely assumes that, because an individual held a certain position within the BOP, that such individual then automatically incurs policymaking liability. *See Weise*, 796 F. Supp. at 200; *see* Compl. at 6–7; Pl.'s Opp'n at 48–49. Further, the Plaintiff must establish that the Defendants acted with something more than mere negligence. *Daniels v. Williams*, 474 U.S. 327, 329–330 (1986). Allegations of participation or actual knowledge and acquiescence must be made with appropriate particularity. *See Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993).

Assuming for the sake of argument that the Plaintiff has satisfied the first element of the claim, he has failed to allege how the Defendants' conduct exceeded mere negligence. In fact, the Plaintiff has not pleaded with sufficient particularity that *ordinary* negligence was committed by the Defendants, having failed to show that Defendants participated in creating TRULINCS' labelling format. *See* Compl. at 6-7; *see also* Pl.'s Opp'n at 2, 43-55. The Plaintiff has, therefore, failed to state a claim against any of the Defendants under the policymaking theory of liability.

### *Supervisory Liability*

The Plaintiff concomitantly makes a claim for supervisory liability, and more specifically, failure to supervise and/or train. *See* Compl. at 7-8; *see also* Pl.'s Opp'n at 2, 43-55. "The party seeking to impose liability [on this theory] must demonstrate that the official had an obligation to supervise or train the wrongdoer in the manner alleged, that the duty was breached, and that this

breach was a proximate cause of the injury." *Haynesworth v. Miller*, 820 F.2d 1245, 1260 (D.C. Cir. 1987). Again, more than mere negligence is required to forge the affirmative link necessary "between the constitutional infringement and the supervisor's conduct." *See Shaw v. District of Columbia*, 690 F. Supp. 2d 43, 61 (D.D.C. 2013) (internal quotation marks omitted). "The duty to supervise is triggered by proof that, absent effective supervision, harm was not merely foreseeable, but was highly likely, given the circumstances of the case. *Haynesworth*, 820 F. Supp. 2d at 1261; *Elkins v. District of Columbia*, 690 F.3d 554, 566 (D.C. Cir. 2012) (explaining that supervisory liability is triggered only when it is clear that "some deprivation of rights will *inevitably* result") (emphasis in original) (internal quotation marks omitted)); *Int'l Action Ctr. v. United States*, 365 F.3d 20, 28 (D.C. Cir. 2004) (explaining that liability will attach where the supervisor "know[s] about the conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye for fear of what they might see").

Supervisory liability under *Bivens* requires evidence of actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; a plaintiff must also prove that a supervisor's response to such knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the practices. *Int'l Action Cntr.*, 365 F.3d at 28 (explaining that the supervisor must "know about the conduct and facilitate it") (internal quotation marks omitted); *see also Johnson v. United States*, 642 F. Supp. 2d 1, 5 (D.D.C. 2009); *Burke v. Lappin*, 821 F. Supp. 2d 244 (D.D.C. 2011).

Further, liability "is triggered only when a supervisor fails to provide more stringent training in the wake of a history of past transgressions by the agency or provides training 'so clearly deficient that some deprivation of rights will *inevitably* result absent additional instruction.'" *Elkins*, 690 F.3d at 566 (emphasis in original) (quoting *Int'l Action Ctr.*, 365 F.3d at 27); *see also*

*Barham v. Ramsey*, 434 F.3d 565, 578 (D.C. Cir. 2006) ("Merely being [the alleged wrongdoer's] supervisor was not enough to attach liability.").

The Plaintiff has not alleged sufficient facts to state a claim for supervisory liability against the Defendants. *See Cameron,* 983 F.2d at 258 (noting that the plaintiff "provided no factual allegations whatsoever to support his claim."). In fact, the Plaintiff has failed to allege any facts connecting these Defendants to the day-to-day operation of TRULINCS at Terre Haute. *See Thomas v. United States*, 779 F. Supp. 2d 154, 157–58 (D.D.C. 2011). Instead, the Plaintiff implausibly presumes that each Defendant was responsible for the supervision and training of each and every subordinate at every prison throughout the country, including the facility where he was detained when he sought to pursue post-conviction relief. *See* Compl. at 7–8; *see also* Pl.'s Opp'n at 2, 43–55. The Plaintiff relies on the baseless presumption that the Defendants would have been personally informed of the various administrative grievances that he filed with BOP, therefore, providing the Defendants with requisite notice of the Plaintiff's alleged TRULINCS hardships. *See id.*

The Plaintiff has plainly failed to state a claim for supervisory liability against any of the Defendants. He has not alleged any reasonable basis that these Defendants were even aware of his perceived hardships, much less that they engaged in a pattern of dangerous willful indifference. *See* Compl. at 7–8; *see also* Pl.'s Opp'n at 2, 43–55. Therefore, the Plaintiff has failed to support his claims under the theory of supervisory liability.

3.      *Qualified Immunity*

The Defendants also move to dismiss on the basis of qualified immunity. Defs.' Mem at 18–24. Government officials performing discretionary functions are generally protected from liability for civil damages, and thus entitled to qualified immunity. This immunity is applicable

when the challenged "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity mitigates the ". . . social costs [of] the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office."  *Harlow*, 457 U.S. at 814.

To overcome the defense of qualified immunity, the Plaintiff is again required to allege facts sufficient to establish a plausible basis for finding that the Defendants, through their own actions, knowingly violated the Constitution or a particular statute. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986). ("[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Simpkins*, 108 F.3d at 369 (explaining that a plaintiff must allege that the official "was personally involved in the illegal conduct").

Here, the Plaintiff has failed to allege facts sufficient to find that these Defendants personally participated in the alleged wrongdoing.  No facts are presented to show that these Defendants knowingly violated the Plaintiff's statutory and/or Constitutional rights, which is fatal to his claim against them.  The Plaintiff's reliance on bald conclusory statements that the Defendants knew or should have known that their policy was causing him harm is insufficient. *See Harlow,* 457 U.S. at 817–18; *see also* Compl. at 6-9.  His allegations are devoid of information establishing the Defendants' personal involvement as to his claims, apart from their hypothetical distantly supervisory roles. *See id.* The Plaintiff relies on conclusory statements that the Defendants ". . . knew or should have known that their [p]olicy would cause/is causing harm." Compl. at 5 ¶ 1; *see also id*. at 6–9.  Such "bare allegations of malice should not suffice to subject

government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow,* 457 U.S. at 817–18.

The Complaint is also devoid of any facts indicating that the Defendants personally violated a clearly established constitutional or statutory right. *See Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998) (citing *Harlow* 457 U.S. at 819); *see also* Compl. at 6–9. Moreover, the Plaintiff's Opposition also fails to offer any further elucidating information in this regard. *See generally* Pl.'s Opp'n. Therefore, the Defendants are protected from suit by the Plaintiff under the doctrine of qualified immunity.

*4.      Due Process Violation Claim*

The Plaintiff broadly alleges that the Defendants violated his due process rights by blocking his access to the court(s) by creating Program Statement 5265.13, and in conjunction with instituting TRULINCS. *See* Compl. at 8–9, Pl's Ex. A; *see also* Pl.'s Opp'n at 44–45. However, governments may impose limits on a prisoner's liberty interests that are protected by the Due Process Clause, "[b]ut these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). For example, changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate are contemplated by his original sentence to prison – are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently." *Gaston v. Taylor*, 946

F.2d 340, 343 (4th Cir. 1991) (en banc) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989)).

The TRULINCS system allows prisoners to correspond with individuals who are not confined both electronically and by mail. The stated program objectives are (1) "[t]o provide inmates with alternative means of written communication with the public," (2) to provide the BOP with an efficient and secure method of monitoring said communications, and (3) to reduce the opportunities for contraband or illegal drugs to be filtered into facilities through mail. *See* Pl.'s Ex. A at 1. Generally, an inmate must ". . . place a TRULINCS-generated mailing label on all outgoing postal mail," and if he fails to do so, ". . . the mail is returned to the inmate for proper preparation." *Id.* at 5; *see also* Program Statement P5265.14, Correspondence (Apr. 5, 2011) at 7 ("[A]ll outgoing mail, for institutions with a TRULINCS-generated mailing label system, must utilize these mailing labels on all outgoing correspondence, in accordance with the Program Statement Trust Fund Limited Inmate Computer System (TRULINCS)—Electronic Messaging.") (emphasis removed).

The Plaintiff is not the first federal prisoner to challenge the constitutionality of Program Statement 5265.13. *See, e.g., Lineberry v. Federal Bureau of Prisons,* 923 F. Supp. 2d 284, 293–94 (D.D.C. 2013). The Plaintiff has provided no basis and no authority to demonstrate that required use of the TRULINCS-generated mailing label violates his due process rights. See Compl. at 8–9. While "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (Stevens, J., concurring) (quoting *Turner v. Safley*, 482 U.S. 78, 84) (1987)), the "very object of imprisonment is confinement," *id.* at 130, and an inmate necessarily surrenders "[m]any of the rights and privileges enjoyed by other citizens," *Id.* at 131. Many federal districts, including other members

of this Court, have recognized that there are clear and legitimate penological objectives associated with TRULINCS and its relevant program statement(s). *See, e.g., Lineberry*, 923 F. Supp. 2d at 293–94; *see also Parisi v. Lappin,* No. 10–40030–GAO, 2011 WL 1045016, at *1 (D. Mass. Mar. 18, 2011); *Russell v. Whitehead*, DKC-09-3007, 2010 WL 2367370 (D. Md. June 9, 2010); *Jones v. Daniels*, No. 10–88–GFVT, 2010 WL 2228355, at *2–*3 (E.D. Ky. June 2, 2010);

The challenges that have been asserted against the BOP's mailing system have been found not to constitute a violation of any clearly established constitutional right, and more specifically, fail to constitute a violation of the Due Process Clause. *See* Compl. at 8–9; *see also* Pl.'s Opp'n at 2, 43–55. Therefore, even if the Defendants were not shielded by the doctrine of qualified immunity, the Plaintiff has failed to adequately allege a violation of his rights under the Constitution. *See id.* Not only are the requirements of TRULINCS constitutional, but additionally, the Northern District of California previously found that there was sufficient space for the Plaintiff to have fit the court's address on the mailing label, and that this could have been accomplished by using commonly accepted abbreviations. *See* Ord. Denying Mot. to Toll at 8.

## D. *RES JUDICATA* & COLLATERAL ESTOPPEL (ALL CLAIMS)

The Defendants also raise the defense of *res judicata* as ground for dismissing the complaint. Defs.' Mem. at 14–17. "The doctrine of *res judicata* prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co*., 723 F.2d 944, 946 (D.C. Cir. 1983). The doctrine contains two theoretical components, which may operate together or separately, more specifically, claim preclusion and issue preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The Defendants argue that the Plaintiff's case should be dismissed under both theories, *see* Defs.' Mem. at 14–17, and the Court agrees that both theories are applicable to the instant matter.

1. *Claim Preclusion*

The Plaintiff's current case is completely derived from his alleged inability to fit a court address on the TRULINCS mailing label due to the space provided, and perceived lack of instruction by Terra Haute prison personnel regarding how to place an address on the labels. *See* Compl. at 3–6. The Plaintiff argues again that he was unable to timely mail and file his Habeas Petition with the Northern District of California, resulting in denial of the petition, and therefore, violated his constitutional rights. *See, e.g.,* Compl. at 4–6; Pl.'s Opp'n at 4, 7. These claims have already been thoroughly adjudicated. *See* Ord. Denying Mot. to Toll at 8; *see also* Ord. Denying Mot. for Relief from Judgment & Indic. Ruling at 2–4; *see also* Ord. Denying Mot. to Alter & Amend at 3–5.

The Plaintiff maintains that the current action is not claim precluded because his current claims ". . . were not raised in [his] habeas proceeding or in his equitable/statutory procedural motion, i.e., his Motion and Request for Statutory and Equitable Tolling of AEDPA's Statute of Limitations & Motion to Vacate." Pl.'s Opp'n at 32. The Court disagrees. The Plaintiff raised his lack of access to the courts in his Motion and Request for Statutory and Equitable Tolling of AEDPA's Statute of Limitations and to Vacate Judgment. *See* Mot. to Toll & Vacate at 10–11. The Plaintiff requested tolling the statute of limitations, and additionally requested that the Northern District of California vacate the judgment dismissing his Habeas Petition. *See id.* at 8 – 12. The Plaintiff's Motion addressed the facts and the law pertinent to what is now being requested from this Court. *See id.* In response, the Northern District of California found directly and dispositively the following: "[a]lthough Petitioner claims that the mailing address of the Court did not fit on the labels used by the TRULINCS program, the evidence establishes that the Court's mailing address did, in fact, fit on the TRULINCS labels." *See* Ord. Denying Mot. to Toll at 8.

A final judgment on the merits of an action precludes the parties or their privies from relitigating claims that "were *or could have been* raised in that action." *Sheppard v. District of Columbia*, 791 F. Supp. 2d 1, 4 (D.D.C. 2011) (emphasis added) (internal quotation marks omitted) (quoting *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002)); *see also Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 218 (D.C. Cir. 2004). "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.' " *Drake,* 291 F.3d at 66 (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). To determine whether two cases share the same nucleus of facts, courts must consider "whether the facts are related in time, space, origin, or motivation[;] whether they form a convenient trial unit[;] and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997) (internal quotation marks omitted). The Northern District of California addressed the same claims regarding the TRULINCS system as those raised in this case, and even assuming that it did not, the Plaintiff had ample opportunity to raise them. *See* Ord. Denying Mot. to Toll at 8; *see also* Ord. Denying Mot. for Relief from Judgment & Indic. Ruling at 2–4; *see also* Ord. Denying Mot. to Alter & Amend at 3–5.

In his Opposition, the Plaintiff insinuates that he only sought *procedural* relief regarding TRULINCS by way of his Motion to Toll & Vacate. *See* Pl.'s Opp'n at 33. However, the Plaintiff actually raised substantive claims regarding the TRULINCS labels, not once, but on three different occasions. *See* Ord. Denying Mot. to Toll & Vacate at 8; *see also* Ord. Denying Mot. for Relief from Judgment & Indic. Ruling at 2–4; *see also* Ord. Denying Mot. to Alter & Amend at 3–5. The fact that his claims were previously before a court through motions rather than by lawsuit, is of no consequence. *See, e.g., Lewandowski v. Property Clerk*, 209 F. Supp. 2d 19, 22–23 (D.D.C. 2002). The Northern District of California examined the arguments and facts submitted by the Plaintiff

and the government, as well as a substantial amount of testimony and other evidence. That court

found against the Plaintiff, explaining:

> Petitioner also takes issue with this Court's holding that he offered no evidence to contradict the December 20, 2011 finding that this court's address fit on the TRULINCS labels, and that the TRULINCS system thus did not prevent him from filing his habeas petition within the statute of limitations. Docket No. 889 at 7. Petitioner offers no new evidence or argument on this front, but merely repeats arguments he raised in his previous motion. *See* Docket No. 882. He argues, for example, that no one ever showed him how to abbreviate the Court's address to fit on a TRULINCS label. However, as noted in this Court's previous order, the two abbreviations included in the government's example label ("Attn:" and "CA") are in general use, and it is not clear why Petitioner would specifically need someone to instruct him to use such abbreviations. In any event, Petitioner raises on new point on this issue.

Ord. Denying Mot. to Alter & Amend at 3–4. The current claims inarguably arise from the same

nucleus of facts as the claims before the Northern District of California, while on consideration of

the Plaintiff's three post-habeas motions. *See* Ord. Denying Mot. to Toll at 8; *see also* Ord. Denying

Mot. for Relief from Judgment & Indic. Ruling at 2–4; *see also* Ord. Denying Mot. to Alter &

Amend at 3–5.

The fact that Plaintiff is seeking relief against new parties is of no consequence, as the

Defendants named in this case are in privity with the government. *See Wilson v. Fullwood*, 772 F.

Supp. 2d 246, 263 (D.D.C. 2011) ("[T]he government, its officers, and its agencies are regarded

as being in privity for [claim-preclusive] purposes.") (alterations in original); *see also Sunshine*

*Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–3 (1940). Additionally, it is of no consequence

that the Plaintiff has asserted his claims in this case under the banner of different causes of action.

*See* Compl. at 6–8. Preclusive effect may be triggered and applied from claims litigated in a habeas

matter to those styled as a § 1983 or *Bivens* case. *McIntyre v. Fulwood*, 892 F. Supp. 2d 209, 215–

16 (D.D.C. 2012); *Christian v. McHugh*, 847 F. Supp. 2d 68, 74–75 (D.D.C. 2012); *Wilson*, 772

F. Supp. 2d at 262; *Nuckols v. Federal Bureau of Prisons,* 578 F. Supp. 2d 79, 82–83 (D.D.C. 2008).

In this matter, the Plaintiff simply raises the same claims against different parties and for different relief. Compare Compl. at 6–9, with Ord. Denying Mot. to Toll at 48, *and* Ord. Denying Mot. for Relief from Judgment & Indic. Ruling at 2–4, *and* Ord. Denying Mot. to Alter & Amend at 3–7. "This is precisely what is barred by *res judicata*." *Apotex,* 393 F.3d at 217-18 (emphasis in original). "[T]he parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate even if they chose not to exploit that opportunity—whether the initial judgment was erroneous or not." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Montana v. United States*, 440 U.S. 147, 153 (1979). "[T]he facts surrounding the transaction or occurrence operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Page*, 729 F.2d at 820 (internal quotation marks omitted). Therefore, the Plaintiff's claims are barred. *See id.*

2. *Issue Preclusion*

In their Motion to Dismiss, the Defendants also rely on the theory of issue preclusion. Defs.' Mem. at 14–17. "[I]ssue preclusion prevents the re-litigation of any issue that was raised and decided in a prior action." *Ficken v. Golden*, 696 F. Supp. 2d 21, 32 (D.D.C. 2010) (internal citations omitted). An issue is precluded if

> the same issue . . . being raised [was] . . . contested by the parties
> and submitted for judicial determination in the prior case, the issue
> [was] . . . actually and necessarily determined by a court of
> competent jurisdiction in that prior case[,] [and] . . . preclusion . . .
> must not work a basic unfairness to the party bound by the first
> determination.

*Martin v. U.S. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)). Unfairness may occur where "the party to be bound lacked an incentive to litigate in the first trial." *Otherson v U.S. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971)). Additionally, "[i]n determining whether issue preclusion exists, a court may take judicial notice of all relevant facts [that] are shown by the court's own records, as well as public records from other proceedings." *Budik v. Ashley*, 36 F. Supp. 3d 132, 142 (D.D.C. 2014) (Walton, J.) (alterations in original) (internal quotation marks omitted). The issue preclusion analysis does not call for this Court's review of the merits of the prior determination. *See Consol. Edison Co. of N.Y. v. Bodman*, 449 F.3d 1254, 1257 (D.C. Cir. 2006).

The Plaintiff has already raised the same issues regarding his disfavor with the TRULINCS system. *See* Ord. Denying Mot. to Toll & Vacate at 8; *see also* Ord. Denying Mot. for Relief from Judgment & Indic. Ruling at 2–4; *see also* Ord. Denying Mot. to Alter & Amend at 3–5. He has repeatedly and exhaustively asserted that the Northern District of California's court address would not fit on a mailing label and, each time, the court found that said issues were meritless. *Id.* The Plaintiff cannot now exploit the fact that his Habeas Petition and post-habeas motions were filed under different federal statutes than the statute under which he now seeks to proceed. *Hardison*, 655 F.2d at 1288; *Truesdale v. U.S. Dep't of Justice*, 657 F. Supp. 2d 219, 223–4 (D.D.C. 2009). Further, as with claim preclusion, privity exists between officers of the same government; thus, a judgment in a suit "between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government." *Nuckols*, 578 F. Supp. 2d at 83 (emphasis in original) (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03 (1940)).

The Northern District of California addressed all of the following conclusively in the several opinions it issued, concluding that: (1) the Plaintiff offered no evidence to contradict the proof offered by the government that the TRULINCS label could be used and the address could have been abbreviated, or why additional instruction to do so was required or expected, (2) the Plaintiff provided no evidence as to why any abbreviation would render the address of the Court unintelligible or undeliverable, (3) the Plaintiff failed to explain why it took an extraordinary amount of time to mail his Habeas Petition to his sister, and (4) the Plaintiff failed to articulate why he felt obliged to wait until his administrative complaints were exhausted before attempting to abbreviate the court's address. *See* Ord. Denying Mot. to Toll at 8; *see also* Ord. Denying Mot. for Relief from Judgment & Indic. Ruling at 2–4; *see also* Ord. Denying Mot. to Alter & Amend at 3–5. Simply put, if this Court proceeded to address the issues asserted in the instant Complaint, that would amount to the relitigation of these same issues. Therefore, the Plaintiff is foreclosed from litigating the issues anew.

E.  DECLARATORY & INJUNCTIVE RELIEF

The Plaintiff seeks declaratory and injunctive relief; however, he lacks standing to do so. Compl. at 9; Pl.'s Opp'n at 55–57. To pursue a claim for prospective injunctive relief, a plaintiff must have standing based on an "injury or threat of injury" that is "[both] real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95–96 (1983) (internal quotation marks and citations omitted). Past exposure to conduct will not suffice to support standing to pursue future injunctive relief. *Id.* at 96 (citing *O'Shea v. Littleton*, 414 U.S. 488, 49–-96 (1974)). "[S]tanding to seek the injunction requested depend[s] on whether he [is] likely to suffer future injury" from the challenged action. *Id.* at 105.

A preliminary injunction ". . . is an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal quotation marks and citation omitted). In deciding whether to grant preliminary injunctive relief, the court "must examine whether (1) there is a substantial likelihood plaintiff will succeed on the merits, (2) [the] plaintiff will be irreparably injured if an injunction is not granted, (3) an injunction will substantially injure the other party, and (4) the public interest will be furthered by the injunction." *Majhor v. Kempthorne*, 518 F. Supp. 2d 221, 232 (2007) (internal question marks omitted) (quoting *Ellipso, Inc. v. Mann*, 480 F.3d 1153, 1157 (D.C. Cir. 2007)). A movant must demonstrate at least "some injury for a preliminary injunction to issue for 'the basis of injunctive relief in the federal courts has always been irreparable harm.' " *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (internal quotations omitted). "A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Id.* (citation omitted).

The Plaintiff fails to satisfy any of the aforementioned prerequisites for injunctive relief. He alleges that he is in danger of future imminent injury from continued implementation of the TRULINCS policy based on the possibility that he may, at some point, be denied access to family, friends, attorneys, courts, and others. Compl. at 9–10; Pl.'s Opp'n at 56. The Plaintiff is basing this assumption on the alleged prior difficulties he expressed in mailing his Habeas Petition. *See* Compl. at 6. This potential falls short as a basis for relief, as it constitutes prior alleged exposure to harm. *See id.* Such an allegation is too speculative to support standing. *See City of Los Angeles*, 461 U.S. at 109.

The Plaintiff also fails to explain why he is in imminent danger of such potential adversity, notwithstanding the findings of the Northern District of California that any such adversity was self-inflicted. *See* Compl. at 9–10; *see also* Pl's Opp'n at 56; Ord. Denying Mot. to Toll & Vacate at 8; Ord. Denying Mot. for Relief from Judgment & Indic. Ruling at 2–4; *see also* Ord. Denying Mot. to Alter & Amend at 3–5. Further, the Plaintiff does not contend that he has had any logistical problems in mailing documents to his sister, and there has been no suggestion of any hardship in his ability to mail multiple documents to this Court. *See* Plaintiff's Motion for Relief from Judgment; Newly Discovered Evidence Pursuant to Fed. R. Civ. P. 60(h)(1)–(4). Therefore, the Plaintiff is not likely to succeed on the merits, and he will not face irreparable harm if such relief is denied. His request may, however, substantially injure the government, as the TRULINCS system was implemented to allow prisoners safe and controlled external communication. *See Majhor*, 518 F. Supp. 2d at 232–33. Carving out individual exceptions without any compelling basis may prove a danger to TRULINCS's successful implementation. *See generally* Pl.' Ex. A.

III.     CONCLUSION

For all the above stated reasons, this case is dismissed as to all claims and all Defendants. The Plaintiff's Habeas Petition was denied by the Northern District of California for untimeliness. *See* Ord. Denying Hab. Pet. at 3. The Northern District of California subsequently examined the facts, evidence, arguments, and circumstances regarding the Plaintiff's late-filing, and whether any alleged encumbrances caused by the TRULINCS labeling system contributed to this situation. The Northern District addressed these claims and issues on three occasions, and the Plaintiff had ample opportunity to raise additional theories and evidence during those proceedings. *See* Ord. Denying Mot. to Toll & Vacate at 8; *see also* Ord. Denying Mot. for Relief from Judgment & Indic. Ruling at 2–4; *see also* Ord. Denying Mot. to Alter & Amend at 3–5.

The underlying crux of the instant matter is the Plaintiff's apparent dissatisfaction with the determinations made the Northern District of California regarding his collateral attacks on his conviction and sentencing, as evidenced by the Plaintiff's focus on these issues in his Opposition to the Defendants' Motion to Dismiss. *See, e.g.,* Pl.'s Opp'n at 35–38. The Plaintiff repeatedly argues that the Northern District was "mistaken," "incorrect," and that it made any number of errors. *See id.* at 37 ¶¶ 2, 3. Having exhausted his avenues for relief from the Northern District of California, the Plaintiff is merely attempting to have this Court reconsider the decisions rendered by that court. This Court cannot do it because it lacks jurisdiction to review the propriety of the judgments issued by the Northern District of California. *See* 28 U.S.C. §§ 1331, 1332 (scope of jurisdiction for all district courts); *Cobb v. United States*, 104 F. Supp. 3d 61, 65 (D.D.C. 2015); *United States v. Choi*, 818 F. Supp. 2d 79, 85 (D.D.C. 2011) ("[A]s a district court is a trial level court in the federal judicial system[,] [i]t generally lacks appellate jurisdiction over other judicial bodies, and cannot exercise appellate mandamus over other courts.") (citations omitted).

For all of the foregoing reasons, this Court concludes that the Defendants are entitled to dismissal of all claims. The Defendants' Motion to Dismiss is granted and this case is dismissed. A separate Order accompanies this Memorandum Opinion.


_____/s/_____
REGGIE B. WALTON
Date:   September 28, 2018             United States District Judge